UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY DENILSON DURAN, | Case No.  1:26-cv-02020-JLT-CDB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS  (A-Number 218-147-608) |
| v. | |
| CHRISTOPHER CHESTNUT, *et al.*, | (Doc. 1) |
| Respondents. | **14-Day Objection Period** |

Petitioner Anthony Denilson Duran ("Petitioner"), a federal immigration detainee proceeding pro se, initiated this action on March 13, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a motion for temporary restraining order that was denied. (Docs. 1, 3, 6).  Petitioner is in custody of Immigration and Customs Enforcement ("ICE") at the California City ICE Processing Center, located in California City, California.  (Doc. 1 at 2). Respondents are Christopher Chestnut (Warden of the Golden State Annex Detention Facility), the current or acting San Francisco ICE Field Office Director, the current or acting Secretary of Homeland Security, and the current or acting United States Attorney General (collectively, "Respondents").  *Id.* at 1.

For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be denied.

*///*

1

I.    **Relevant Background**

The relevant facts are taken from the parties' respective briefings.  *See* (Docs. 1, 3, 8). Petitioner is a citizen and native of Guatemala who unlawfully entered the United States at an unknown location on an unknown date.  *See* (Doc. 8 at 1); (Doc. 8-1, "Ex. 1" at 2); *cf.* Ex. 1 at 4 ("[Petitioner] last entered the United States on May 11[], 2006, at the age of [five].").

On May 26, 2022, Petitioner was convicted of shooting at a dwelling or a vehicle in violation of California Penal Code § 246 and was sentenced to a three-year term of incarceration. (Doc. 8 at 1-2); *see* Ex. 1 at 4.  After Petitioner was released from custody, he was placed in removal proceedings and detained under 8 U.S.C. § 1226(a) and ordered removed by an immigration judge on August 1, 2023.  (Doc. 8 at 2); *see* Ex. 1 at 2 ("On March 15[], 2023, [DHS] … initiated removal proceedings against [Petitioner], by filing a Notice to Appear [("NTA")] … with the Van Nuys immigration court. … [T]he Department charged [Petitioner] with inadmissibility under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act [("INA").]").

On May 30, 2024, Petitioner received a bond hearing under § 1226(a) and was denied bond. *Id.*  The BIA affirmed the denial on October 2, 2024. *Id; see* (Doc. 8-4, "Ex. 4") (October 2, 2024, BIA opinion dismissing Petitioner's appeal of May 30, 2024, order denying bond).

Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"), the BIA affirmed Petitioner's order of removal.  (Doc. 8 at 2); *see* (Doc. 8-2, "Ex. 2") (March 18, 2025, BIA opinion dismissing Petitioner's appeal of August 1, 2023, removal order).  Petitioner thereafter filed a petition for review ("PFR") of the BIA decision with the Ninth Circuit and was granted a stay of removal on June 16, 2025.  *Id.*; *see* (Doc. 8-3, "Ex. 3") (June 16, 2025, order of the Ninth Circuit).  On April 3, 2026, the Ninth Circuit issued an order submitting Petitioner's PFR "on the briefs and record without oral argument" which remains pending.  *Id.*; *see* (Doc. 8-5, "Ex. 5").  On April 23, 2026, the Ninth Circuit entered an unpublished memorandum decision affirming the BIA's finding that Petitioner is ineligible for withholding of removal.  *See Duran v. Blanche*, No. 25-2086 (9th Cir. Apr. 23, 2026).

Petitioner alleges that he "has lived in the United States since childhood, has deep community and family ties, [] has not committed any new offenses" and "has complied with past

2

obligations and has taken responsibility for his past mistakes." (Doc. 1 at 3).  He alleges that he does not pose a danger or a flight risk and that "[l]ess restrictive alternatives to detention are available and would be effective." *Id.*

## II.    Governing Authority

### A.    The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  *See* 28 U.S.C. § 2241.  A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.    Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225.  Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

#### 1.    Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at

3

108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

**2.      Expedited Removal and Mandatory Detention (§ 1225)**

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

4

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the

applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."))

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    <u>The Government's Recent Change in Position</u>

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply

expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

## III.    Exhaustion

### A.    Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v.*

*Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B.   Analysis

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(a) and § 1226(c), and Petitioner must remain incarcerated under that framework without individualized process.   Petitioner therefore lacks recourse through statutory or administrative means.  *See Avilez v. Garland*, 69 F.4th 525, 533-34 (9th Cir. 2023) (*citing Jennings v. Rodriguez*, 583 U.S. 281, 303, 305-06 (2018) ("We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes" and "§ 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'")); *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'") (quoting *Laing*, 370 F.3d at 1000); *Chavez v. Noem*, -- F. Supp. 3d. --, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) ("The Court therefore finds the prudential exhaustion requirements waived for futility.  Because Petitioners need to show only one of the Laing factors applies, … the Court need not address the other factors.") (internal citation omitted).

For these reasons and because Respondents do not argue Petitioner should be required to exhaust administrative remedies, waiver of the prudential exhaustion requirement for Petitioner's claim for habeas corpus relief is appropriate. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) (waiving exhaustion requirement; "The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) (same); *Cortez v. Sessions*, 318 F. Supp. 1134, 1138-39 (N.D. Cal. 2018) (same);

8

*Carmelo Beltran v. Kristi Noem*, No. 25cv2650-LL-DEB, 2025 WL 3078837, at \*4 (S.D. Cal. Nov. 4, 2025) (same); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at \*7, n.9 (E.D. Cal. Oct. 27, 2025) (same); *Kuzmenko v. Phillips*, No. 25-cv-00663-DJC-AC, 2025 WL 779743, at \*4 (E.D. Cal. Mar. 10, 2025) (same)).

## IV.   **Discussion**

Petitioner asserts a single cause of action in his petition for violation of procedural due process under the Fifth Amendment to the U.S. Constitution.  *See* (Doc. 1 at 3).

### A.   **Procedural Due Process**

#### 1.   Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'"  *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V).  "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process."  *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'"  *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746).  "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'"  *Mathews*, 424 U.S. at 902 (citation omitted).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

2.     Analysis – Relevant Statutory Detention Authority

Respondents assert that Petitioner is subject to detention under § 1226(a) and § 1226(c). *See* (Doc. 8 at 2).

Another judge of this Court has addressed and applied the holdings of the key Supreme Court and Ninth Circuit rulings applicable here, and the undersigned adopts that analysis herein (*see Kakkar v. Chestnut*, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *4-5 (E.D. Cal. Dec. 15, 2025)):

> Under 8 U.S.C. § 1226(a)(2), DHS "may continue to detain" or "may release the alien" on bond or conditional parole, "pending a decision on whether the alien is to be removed from the United States." Such conditional release, however, may be revoked by DHS "at any time." 8 U.S.C. § 1226(b). The Board of Immigration Appeals ("BIA") has placed the following limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981).
>
> Alternatively, under Section 1226(c), DHS "shall take into custody any alien who is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(iii) of this title." 8 U.S.C. § 1226(c). This includes any "alien who is convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Under this provision, non-citizens may be released "only if the Attorney General decides ... that release ... is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation ... and the alien will not pose a danger to the safety of other[s] ... and is likely to appear for any scheduled proceeding." *Id.* at § 1226(c)(4). Thus, noncitizens detained under this category are not entitled to bond hearings as those detained under § 1226(a) are. *See Jennings v. Rodriguez*,

10

583 U.S. 281, 303–304 (2018) ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions.") (emphasis in original).

Section 1226(c)'s mandatory detention requirement applies even if the government does not immediately detain a criminal non-citizen upon immediate release from a correctional facility. *See Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (finding that the Ninth Circuit's interpretation—namely, that criminal aliens not arrested immediately upon release from criminal custody are exempt from § 1226(c)'s mandatory detention and thus entitled to a bond hearing—is wrong). However, the Supreme Court expressly noted that its decision, "on the meaning of that statutory provision[,] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." *Id*. at 420. Courts routinely review as-applied constitutional challenges to § 1226(c) detention. *See e.g., Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL 2744397, at *5 (N.D. Cal. March 31, 2023); *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025).

Here, in the August 1, 2023, removal order, the immigration judge ("IJ") found that Petitioner's May 26, 2022, conviction for a shooting at a dwelling or a vehicle in violation of California Penal Code § 246 "is not an aggravated felony, so it does not per se bar [Petitioner] from asylum or either form of withholding of removal" but that the conviction is "a particularly serious crime, based on the individual circumstances of the crime, as well as the nature of the offense, and the sentence involved." Ex. 1 at 4. The IJ found that Petitioner's conviction "constitutes a particularly serious crime, and that it indicates that [he] is a danger to the community" such that the IJ denied Petitioner's applications for asylum and for withholding from removal. *Id.* at 6.

Under § 1226(c), detention is mandatory where a noncitizen "is deportable by reason of having committed any offense covered" in § 1227(a)(2)(C). 8 U.S.C. § 1226(c)(1)(B). Section 1227(a)(2)(C) provides that "[a]ny alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, *using*, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive … in violation of any law is deportable." 8 U.S.C. § 1227(a)(2)(C). Under California Penal Code § 246, "[a]ny person who

shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, [or] occupied motor vehicle … is guilty of a felony[.]" Cal. Pen. Code § 246.

Petitioner's § 246 conviction following his guilty plea to the charge of "discharging a firearm at an occupied motor vehicle" (*see* Ex. 1 at 5) qualifies as an offense covered under § 1227(a)(2)(C) such that he is subject to mandatory detention under § 1226(c).  Notwithstanding Respondents contend that "Petitioner remains detained under the mandatory provisions of [] § 1226(a)" while appearing to argue that his detention is authorized under § 1226(c) (*see* Doc. 8 at 2), because the record shows that Petitioner is subject to mandatory detention under § 1226(c) based on his conviction for violations of § 246, under the statutory framework above, Petitioner is subject to § 1226(c)(4)'s release provision and therefore is not entitled to bond hearings in the same fashion as those detained under § 1226(a).

Notwithstanding the undersigned's finding that Petitioner is subject to mandatory detention under § 1226(c), here, Petitioner raises a due process argument that his "continued detention without a [bond] hearing violates due process." (Doc. 1 at 3).  As explained in the statutory scheme above, *Preap* "does not foreclose as-applied challenges … to applications of [§ 1226(c)]." *Preap*, 586 U.S. at 420; *Kakkar*, 2025 WL 3638298 at *5.

Therefore, the undersigned considers Petitioner's as-applied challenge to his re-detention raised in his due process claim.

3.      Analysis – Procedural Due Process

On Petitioner's as-applied procedural due process challenge to his continuing detention by immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and … [(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

"There is … a meaningful distinction between a challenge to an initial period of detention, … and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings." *Carballo v. Andrews, et. al*, No. 1:25-cv-00978-KES-EPG, at

12

2025 WL 2381464, at *7 (E.D. Cal. Aug. 15, 2025) (emphasis in original). "'[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person.'" *Id.* (*quoting Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025)). "In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity 'to form the [] enduring attachments of normal life.'" *Id.* (*quoting Morrissey*, 408 U.S. at 482).

If Petitioner had been released from custody following service of his prison sentence and, sometime later, arrested by ICE and detained pending removal proceedings, Petitioner could argue he has a liberty interest in release and be entitled to a bond hearing. But that does not appear to be the case here. As noted above, Petitioner entered the United States at an unknown location on an unknown date, and there is no record that Petitioner was ever initially apprehended by immigration authorities and released into the United States on parole or supervision. The record shows Petitioner was first apprehended by immigration authorities following his release from state custody. *See* Ex. 1. Although Petitioner's detention is justified under § 1226(c), on May 30, 2024, he received a bond hearing under § 1226(a) where an IJ determined Petitioner "did not meet his burden of proof to establish that he would not present a danger to the community if released from custody[,]" a decision affirmed by the BIA on October 2, 2024. *See* Ex. 4 at 3-4. Thus, in this case, Petitioner does not have a protected liberty interest in his release, and due process does not require a further bond hearing.

Even were the undersigned to find that Petitioner has a liberty interest, Petitioner fails to show he is entitled to any relief under *Mathews*. As to the first factor, Petitioner has not shown that he has a significant private interest to a second bond hearing given he was provided a § 1226(a) bond hearing, was determined by an IJ to be a danger to the community, and unsuccessfully appealed that decision before the BIA. Notwithstanding Petitioner's denial of bond, the undersigned acknowledges that his detention "for over three years" (Doc. 8 at 1) is lengthy such that it may implicate due process concerns. *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause[.]").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is low as Petitioner received a bond hearing pursuant to § 1226(a) and Petitioner failed to meet his burden to establish that he is not a danger to the community, and the BAI affirmed the IJ's denial of bond on October 2, 2024.  *See* Ex. 1; *Rodriguez Diaz*, 53 F.4th at 1210 ("[T]he agency's decision to detain [Petitioner] was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'") (citing *Yagman v. Garcetti*, 852 F.3d 859, 865 (9th Cir. 2017)).  Further, Petitioner does not establish "the probable value, if any" of a subsequent bond hearing, such as any changed circumstances or additional evidence that would change the outcome of Petitioner's bond determination.  *See Mathews*, 424 U.S. at 334; *cf. Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high.").  Therefore, this factor weighs against granting a subsequent bond hearing.

Third, the government has a clear interest in detaining Petitioner to "'protect[] the public from dangerous criminal aliens.'" *Rodriguez Diaz*, 53 F.4th at 1208 (citation omitted); *see id.* ("The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal.").  Therefore, this factor weighs against Petitioner.

In sum, the undersigned finds that even where Petitioner has established a liberty interest, under *Mathews*, Petitioner is not entitled to a subsequent bond hearing.  Accordingly, the undersigned will recommend that Petitioner's petition be denied.

## V.    **Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (Doc. 1) be DENIED.

2.  The Clerk of the Court be DIRECTED to enter judgment in favor for Respondents and to close this case.

These findings and recommendations will be submitted to the United States District Judge

14

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within 14 days** after being served with these findings and recommendations, the parties may file written objections with the Court. Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 18, 2026**

UNITED STATES MAGISTRATE JUDGE